Kansas City & Memphis Railway Company *v.* New York Central & Hudson River Railroad Company.

## Opinion delivered January 12, 1914.

1. Evidence—admission of incompetent evidence—prejudice.—The admission of incompetent evidence tending to prove facts that are already established by evidence which is uncontradicted, is not prejudicial error. (Page 616.)

2. Carriers—freight—misrepresentation as to value—damages.— Where a shipper, by any affirmative representation, deceives the carrier as to the value of the article to be shipped, or by any device or artifice conceals the value of the article to be shipped, for the purpose of securing a lower rate of freight than would be charged were the true nature and value of the article offered for shipment disclosed, if a loss occurs, the carrier will only be liable to the shipper for the value of the articles as represented, and not for the value as it really is. (Page 617.)

3. Carriers—freight—value—concealment — damages. — Where the shipper of freight conceals the real nature and value of the goods to be shipped, and thereby induces the carrier to ship the same for a lower rate than would be charged, were the actual value known, in case of a loss, the carrier will be liable only for the value of the article, as the shipper, through his conduct, represented it to be. (Page 617.)

4. Carriers—misrepresentation as to value of freight—fraud— question for jury.—Where A. shipped goods as vinegar stock, and the same were lost, in an action for damages for the loss, under the proof, held the question of fraud on the part of the shipper was for the jury. (Page 618.)

5. Carriers—damage to freight—rights of initial carrier.—Under the Hepburn Act, § 20, the initial carrier of freight may recover from a connecting carrier, the amount of damage it has been required to pay the shipper by reason of the negligence of the connecting carrier, and the receipt obtained from the shipper, provided in the act, will, in the absence of fraud, be the basis of recovery against the connecting carrier. (Page 619.)

6. Carriers—liability of delivering carrier.—When the delivering carrier of an interstate shipment of freight, delivered the shipment to the wrong party, and the initial carrier, was, under the Hep-

burn act, required to pay the shipper for the loss, the initial carrier has a right to recover from the delivering carrier, the amount paid the shipper, and has no right, nor is it obliged, to proceed against the party to whom the goods were wrongfully delivered. (Page 620.)

Appeal from Benton Circuit Court; *J. S. Maples,* Judge; affirmed.

*Dick Rice* and *McGill & Lindsey,* for appellant.

1. The depositions of appellee should have been suppressed. Acts 1905, Act 326, p. 778, § 3; 9 Ark. 62.

2. The verdict is against the law and evidence. The receipt for amount paid is not conclusive under the Hepburn act. The goods were shipped as ''vinegar stock,'' not pure apple vinegar. No value was fixed in the bill of lading. A stipulation in a bill of lading that in case of loss the measure of damages shall be the value at point of shipment instead of destination is void in the absence of consideration therefor. 83 S. W. 333; 48 Ark. 502; 46 *Id.* 485. The effect of the Hepburn act is to make the delivering carrier the agent of the initial carrier. 56 U. S. (L. Ed.) 517; 55 S. W. 309; 124 *Id.* 1033; 55 U. S. (L. Ed.) 179. No Legislature or commission can make that conclusively true which may be shown to be false. 33 U. S. (L. Ed.) 970; 68 Pac. 652; 69 N. E. 765; 8 Cyc. 820; 21 Ia. 70; 23 Ind. 46; 20 U. S. (L. Ed.) 519; Wigmore on Ev., § 1351; 64 N. Y. 268; 33 Ark. 820; 36 S. W. 183.

3. Where a shipper by fraud, concealment, falsity, or any device, misstates or conceals the real contents, the carrier is absolved from liability for the full value of shipment. 1 Hutchinson on Carriers (3 ed.), 448, §§ 328-332; 9 Wend. 116; 62 N. Y. 39; 70 *Id.* 410; 28 U. S. (L. Ed.) 721; 91 Ark. 97; Moore on Carriers 356, § 35; 36 S. W. 183.

4. The offset should have been allowed. 131 S. W. 62.

*B. R. Davidson* and *Thos. S. Buzbee,* for appellee.

1. There was no error in refusing to suppress depositions, but if it was, the error was not prejudicial.

The admission of incompetent evidence proving uncontroverted facts is harmless. Kirby's Dig., § § 3184-5, as amended by Acts 1905, No. 326; 74 Ark. 417; 76 *Id.* 276; 78 *Id.* 7; 78 *Id.* 77.

2. The bill of lading contains the stipulation that the value should be the *"bona fide* invoice price." Even if the shipper misrepresented the nature of the goods to obtain lower freight rate, this would not have created a contract for released liability. 189 Fed. 1014.

3. The receipt is conclusive as to value. 219 U. S. 186.

4. Appellant was not entitled to an offset. For full discussion of liability for delivery without taking up bills of lading, see 77 Ark. 482. The shipper owed no duty to proceed against the bankrupt. It looked only to the initial carrier for protection. Hepburn Act, § 20. Instruction 1 was wrong, but the jury was right in their finding.

Wood, J. The appellee sued the appellant to recover the value of two carloads of vinegar stock, amounting to $1,249.89. The complaint, after alleging the organization of appellant and appellee, and that they were common carriers engaged in interstate commerce, averred that in August, 1910, the appellee received from the American Fruit Product Company, at Rochester, New York, two carloads of vinegar stock to be transported to Rogers, Arkansas, and there to be delivered to the order of the shipper upon surrender of the original bills of lading properly endorsed; that the appellee issued its bills of lading for said cars as required by section 20 of the act of Congress, entitled, "An Act to Regulate Commerce," approved June 29, 1906, and amended February 25, 1909, and June 18, 1910; that appellee, under that act, became liable to the holder of the bills of lading for any loss, damage or injury to said cars of vinegar stock caused by it or any connecting carrier to which same might be delivered; that the appellee delivered the same to its connecting carriers, and that they delivered

the same to the appellant to be transported to the town of Rogers, in the State of Arkansas, and there delivered in accordance with the contract of shipment as evidenced by the bills of lading issued by the appellee; that the appellant, in violation of the contract, failed to deliver the cars to the lawful owner and holder of the bills of lading, and that by reason of such failure, the appellee became liable to the American Fruit Product Company in the sum of $1,249.89, which sum appellee paid and procured a receipt from the American Fruit Product Company for same, and that by the terms of the act known as the Hepburn Act, appellee should recover from appellant the above amount.

The appellant denied the allegations of the complaint except as to the organization of the companies, and that it is a common carrier. It set up that the O. L. Gregory Vinegar Company, the consignee, had refused to accept the vinegar, and had entered into correspondence with the American Fruit Product Company looking to an adjustment, and that the said fruit product company consented for the O. L. Gregory Vinegar Company to receive said vinegar without the surrender of the bills of lading. It alleged that the O. L. Gregory Vinegar Company was adjudged a bankrupt by the United States District Court at Fort Smith; that the appellee had knowledge thereof, and failed and refused to present its claim against the bankrupt estate, and that if it had presented its claim against said estate, it would have received the sum of $350 on the claim. Therefore, appellant asked that in case of judgment against it, it have an offset and credit on appellee's claim for that sum.

The appellee paid the consignor the amount sued for and had received its receipt for said sum, and introduced the depositions of certain witnesses to that effect. The appellant moved to suppress these depositions on the ground that the depositions of the witnesses were not certified as required by law. We find it unnecessary to determine whether these depositions were properly certified, for the reason that the fact which appellee sought

to prove by these depositions was fully established by uncontradicted evidence through the depositions of other witnesses, with exhibits thereto, which were introduced without objection. Therefore, the depositions sought to be suppressed were but *cumulative testimony, and no prejudicial error in the court's ruling could have resulted to appellant even if the depositions were not taken and certified as the law requires. The admission of incompetent evidence tending to prove facts that are already established by evidence which is uncontradicted is not prejudicial error. *Lee* v. *State,* 78 Ark. 77; *Wade* v. *Goza,* 78 Ark. 7; *Maxey* v. *State,* 76 Ark. 276; *Pace* v. *Crandell,* 74 Ark. 417.

There was proof tending to show that the two carloads of vinegar for the loss of which damages are sought, were shipped by the consignor as vinegar stock, as shown by the bills of lading. The bills of lading showed that each car contained one hundred barrels of vinegar stock.

The appellant contends that the consignor, the American Fruit Product Company, was not entitled to receive payment for a higher grade and a more valuable article than that designated in the bills of lading; that the consignor, by thus misbranding the shipment and getting a cheaper rate of freight than it would have had to pay had the shipment been correctly branded, was guilty of a fraud on the railway companies, and that therefore the initial carrier was only liable for the market value of vinegar stock at the place of delivery in Benton County, and that it was not liable for the market value of pure apple cider vinegar in August, 1910, in Rochester, N. Y., the place from which the shipment was made.

The court, at the instance of the appellant, instructed the jury, in effect, that if they found from the evidence that the consignor shipped vinegar of the value of thirteen and one-half cents per gallon, but billed the same as vinegar stock, and that the vinegar stock was of less value than vinegar, and that the consignor did not dis-

close to appellant the fact that the barrels shipped contained vinegar, if they did contain vinegar, and that the appellant delivered said shipment without knowledge or notice that the barrels contained vinegar instead of vinegar stock, then defendant would only be liable for the value of vinegar stock.

The court also, at the request of appellant, gave an instruction which told the jury that appellee could only recover the market value of the articles shipped notwithstanding the appellee may have paid the American Fruit Product Company for a higher priced article.

The law is well settled that where a shipper, by any affirmative representation, deceives the carrier as to the value of the article to be shipped, or by any device or artifice conceals the value of the article to be shipped, for the purpose of securing a lower rate of freight than would be charged were the true nature and value of the article offered for shipment disclosed, if a loss occurs the carrier will only be liable to the shipper for the value of the article as represented, and not for the value as it really is.

Where a shipper presents an article for shipment packed in such form and dimensions as to conceal its real nature and value, and to throw the carrier off his guard and to cause him to receive a package for shipment at a less rate of freight than would be charged if the shipper disclosed the nature and value of the article offered for shipment, the conduct of the shipper, in failing to disclose the nature and value of the article offered for shipment, would be tantamount to a fraud on the carrier whether the shipper so intended it or not, and in case of loss the shipper could only recover for the value of the shipment as it appeared to be. In other words, any conduct on the part of the shipper, either intentional or unintentional, the practical effect of which is to deceive the carrier into a contract of carriage (for a lower rate) that it would not have entered into but for such conduct on the part of the shipper, will, in case of a loss, render the carrier liable only for the value of the

article, as the shipper, through his conduct, repreesnted the article to be.   See Hutchinson on Carriers (3 ed.), § § 328-332; *Hart* v. *Pa. Ry. Co.,* 28 (L. Ed.) U. S. Rep. 721; *New York Cent. & Hudson River Ry. Co.* v. *Olga De Maluta Fraloff,* 100 U. S. 24; *Magnin* v. *Dinsmore,* 62 N. Y. 39; *Magnin* v. *Dinsmore,* 70 N. Y. 410; Moore on Carriers, pp. 356-358.   The shipper in all such cases will be estopped by his conduct from claiming damages, for goods different, and of a greater value than he represented them to be.

In *Kansas City Ry. Co.* v. *Carl,* 227 U. S. 639-651, the court quoting from *Hart* v. *Penn. Rd.,* 112 U. S. 331, said: "If the shipper is guilty of fraud or imposition by misrepresenting the nature or value of the articles he destroys his claim to indemnity, because he has attempted to deprive the carrier of the right to be compensated in proportion to the value of the articles and the consequent risk assumed."

Without setting out the evidence in detail, it suffices to say that it was a question for the jury as to whether the consignor, the American Fruit Product Company, by its conduct, perpetrated a fraud upon the appellee and its connecting carriers in branding the shipments *vinegar stock* instead of *pure apple cider vinegar.*

There was ample testimony to warrant the jury in finding that these cars contained goods of different brands and grades of vinegar, and that the mixture of articles constituting the contents of these cars was, in good faith, regarded by the shipper as vinegar stock, and hence he so classified and designated the same of that brand when he offered same for shipment.   At any rate we are not justified in declaring as matter of law that the shipper perpetrated a fraud upon the appellee, and the court did not err in sending the question to the jury.

When the instructions given at the instance of the appellant are viewed in the light of the law as above announced, it will be seen that appellant got the benefit of its contention before the jury on the issue of fraud under

a charge that was at least as favorable as it was entitled to.

Furthermore, the contract as evidenced by the bill of lading provides: "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property, being the *bona fide* invoice price, if any, to the consignee, etc." The contract contains no provision releasing the appellee from the full value of the articles shipped as shown by the "invoice price," and, in the absence of fraud on the part of the shipper as above discussed, he would be entitled under the contract to the full value of the articles shipped as shown by the "invoice price," to the purchaser. Appellant does not contend that the value of the two carloads of vinegar stock at the invoice price to the purchaser would have been less than the amount for which appellee sued ($1,249.89).

What we have said on this subject is only to show that there is no contract for released liability. As we construe the provision in regard to the receipt, which we will next consider, it was unnecessary for appellee to make proof before the jury as to the invoice price of the goods.

The court in effect instructed the jury that if a demand was made upon the appellee as the initial carrier for the sum of $1,249.89 damages, and that the shipper made proof to the initial carrier that it had been damaged in said sum, and that the initial carrier paid it; then it was the duty of the jury to find the issues for the plaintiff.

Appellant contends that it was the duty of appellee to make proof before the jury as to the value of the goods in controversy, and that the receipt which appellee held from the shipper for $1,249.89 showing this amount paid by appellee to the shipper was not proof of appellee's claim.

The concluding paragraph of section 20 of the "Hepburn Act" is as follows:

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment or transcript thereof."

It was the purpose of Congress by the Carmack Amendment to the Hepburn Act to make the initial carrier liable for loss caused by it, or any connecting carriers, and to give the initial carrier, after it has been required to pay the loss, a remedy over against the particular connecting carrier causing the loss, for the amount paid by the initial carrier as evidenced by "any receipt," etc. See *Atlantic Coast Line* v. *Riverside Mills,* 219 U. S. 186. The receipt mentioned in the absence of actual fraud, or such gross negligence on the part of the initial carrier in making the settlement with the shipper as would constitute a legal fraud, would be sufficient evidence to justify a recovery by the initial carrier against the connecting carrier, of the amount as shown by the receipt. To be sure, there would have to be a *bona fide* claim, by the initial carrier. But if there is a loss of goods under a contract of affreightment made with the initial carrier which it in good faith has paid to the owner, it needs no other evidence to establish the amount of such claim against the carrier causing the loss, than the amount specified in the receipt which it holds from the owner of the lost goods. The provision was intended to make the remedy of the initial carrier as complete and convenient as possible, and therefore the act provides for the simple, easy and direct method of establishing the amount of the claim by the receipt showing the payment. The amount of the receipt establishes the amount of the claim of the initial carrier, and in the absence of fraud as explained, is conclusive thereof. The burden would be upon the defend-

ant if it alleged fraud on the part of the initial carrier in procuring the receipt to show it.

It follows that the instruction of the court given at the instance of appellee, even if not technically accurate, was not prejudicial.

The evidence is sufficient to establish the fact that appellant had delivered the cars of vinegar stock to the O. L. Gregory Vinegar Company, the purchaser thereof, without taking up the bills of lading. This negligent act of appellant under the Carmack Amendment to the Hepburn Act, made appellee liable to the consignor for the loss thus sustained by him.

Under the amendment to the Hepburn Act, neither the consignor, nor the initial carrier had any privity with the O. L. Gregory Vinegar Company. The appellant could have called upon the vinegar company for the value of the goods, and could have presented its claim in the bankruptcy proceeding against the estate of the Vinegar Company. But neither the consignor nor the appellee had any rights there. The appellant therefore is not entitled in this proceeding to the offset claimed.

The appellant complains of the ruling of the court in refusing to exclude the testimony of a witness named Jackson. So much of the testimony of this witness as appellant has abstracted is wholly irrelevant, but it is also harmless and immaterial and could not have been prejudicial to appellant, under the rule we have announced as to the effect of the receipt as evidence.

Upon the whole we find no reversible error and the judgment is therefore affirmed.